UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENNIS S., | |
| Plaintiff, | No. 19 CV 2245 |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | Magistrate Judge McShain |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dennis S. brings this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) decision denying his application for benefits. For the following reasons, the Court grants Plaintiff's motion for summary judgment [15],[2] denies the Commissioner's motion for summary judgment [23], reverses the SSA's decision, and remands this case for further proceedings.

**Procedural Background**

Plaintiff applied for disability insurance benefits on January 21, 2016, alleging a disability onset date of December 18, 2015. [10] 188-189. The claim was denied initially and on reconsideration. [*Id*.] 104-113. Plaintiff requested a hearing, which

---

[1] In accordance with Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as the defendant in this case in place of the former Commissioner of Social Security, Andrew Saul.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. However, citations to the administrative record [10-1] refer to the page number in the bottom right corner of each page.

was held by an ALJ on September 20, 2017. [*Id.*] 28-81. In a decision dated April 12, 2018, the ALJ found that Plaintiff was not disabled. [*Id.*] 10-21. The Appeals Council denied review on February 22, 2019, making the ALJ's decision the final agency decision. [*Id.*] 1-5. This Court has jurisdiction to review the SSA's decision under 42 U.S.C. § 405(g).[3]

## Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairment; (4) whether the claimant can perform his past relevant work; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a

---

[3] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge [8].

claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (internal citation omitted).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted); *see also Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) ("When an ALJ recommends that the agency deny benefits, it must first 'build an accurate and logical bridge from the evidence to the conclusion.'") (internal citation omitted).

## Discussion

Plaintiff, who was fifty years old at the time of his alleged onset date, sought disability benefits based on his seronegative rheumatoid arthritis, foot neuralgia, migraines, unspecified inflammatory polyarthropathy, obesity, and hemifacial spasm. [10-1] 15. Plaintiff additionally submitted evidence that he had been diagnosed with dizziness, hypertension, an unhealed left wrist fracture, low back pain, peripheral neuropathy, and splenic lesion. [16] 2; *see also, e.g.,* [10-1] 323, 612-13, 629, 760-61, 767. Plaintiff, who had worked as a truck driver since 1986, testified

3

at the hearing before the ALJ that he stopped working in 2015 because he was having a hard time gripping the steering wheel and performing the functions of his job. [16] 2; [10-1] 36.

At step one of her written decision rejecting Plaintiff's claim, the ALJ found that Plaintiff has not engaged in substantial gainful activity after his alleged onset date. [10-1] 12. At step two, the ALJ found that Plaintiff had four severe impairments: seronegative rheumatoid arthritis, bilateral lower extremity peripheral neuropathy, degenerative disc disease of the lumbar and cervical spine, and obesity. [*Id.*] 13. The ALJ acknowledged that the record contained evidence of additional impairments, "including migraines and hemifacial spasms," but that the record did not contain significant medical findings showing these impairments caused "more than minimal limitations on the claimant's ability to perform work activities." [*Id.*]. The ALJ went on to state: "[h]owever, all of the claimant's medically determinable impairments, both severe and non-severe, have been considered in assessing his residual functional capacity." [*Id.*]. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal the severity of any listed impairment. [*Id.*] 13-14.

Before proceeding to step four, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567(b), with certain additional environmental and postural limitations. [10-1] 14-15. More specifically, the ALJ found that Plaintiff:

> [C]an lift and/or carry 20 pound occasionally and 10 pounds frequently. He can stand and/or walk for about six hours total in an 8-hour workday, and sit for about six hours total. He can occasionally kneel, crouch, crawl, and climb ramps and stairs, but can never climb ladders, ropes,

4

> and scaffolds, or work at unprotected heights. He should avoid concentrated exposure to temperature extremes, humidity, and wetness. He can frequently handle and finger bilaterally.

[*Id.*] 14. Proceeding to step four, the ALJ found that Plaintiff could not perform his past relevant work as a truck driver. [*Id.*] 19. Finally, at step five, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform based on his RFC: ticket taker, cafeteria attendant, and cashier. [*Id.*] 20. Accordingly, the ALJ found that plaintiff was not disabled. [*Id.*] 20-21.

Plaintiff makes several arguments as to why the Commissioner's decision should be reversed and remanded, including that (1) the ALJ failed to consider all of Plaintiff's impairments, and the combination of those impairments, in determining his RFC; and (2) the ALJ failed to address certain opinions from his treating physician and favorable testimony from the VE regarding how Plaintiff's potential absences and off-task time would impact his ability to perform other work. *See, e.g.,* [16] 6-7, 13-15; [25] 3-4, 8.

The Court agrees with Plaintiff that the ALJ improperly failed to address all of his claimed impairments and the combination of those impairments in her RFC determination. The Court also agrees that the ALJ improperly ignored favorable evidence and testimony related to Plaintiff's likely absences and off-task time. Consequently, the Court concludes that the Commissioner's decision must be reversed.[4]

---

[4] Because the Court finds these issues dispositive, it need not address all of Plaintiff's other arguments for remand.

### A. The ALJ's determination that Plaintiff has the RFC to perform light work does not have a substantial evidentiary basis.

"A disability claimant's RFC describes the maximum [he] can do in a work setting despite [his] mental and physical limitations." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). "An ALJ must evaluate all relevant evidence when determining an applicant's RFC, including evidence of impairments that are not severe." *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). "Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Id.* at 592. In other words, as with any well-reasoned decision, the ALJ must demonstrate that her RFC determination is based on adequate evidence contained in the record, and she must explain why contrary evidence does not persuade her to reach a different result. *See Berger*, 516 F.3d at 544.

#### 1. *The ALJ did not consider all of Plaintiff's impairments and their combined effect.*

Plaintiff argues that the ALJ committed an error in her RFC analysis by failing to address several of his impairments, and, for those impairments the ALJ did address, failing to consider how the combination of his impairments impacted his RFC. Specifically, Plaintiff argues that the ALJ did not address his dizziness, hypertension, unhealed left wrist fracture, myelopathy, and splenic lesion. [16] 6-7. Further, Plaintiff argues that, with regard to his severe impairments of seronegative rheumatoid arthritis, bilateral lower extremity peripheral neuropathy, degenerative

6

disc disease, and obesity, the ALJ did not consider their "complex interrelationship but rather considered them *seriatim*" which was also an error. [16] 7.

The Seventh Circuit has "frequently reminded the agency that an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) ("In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling."). Thus, an ALJ commits an error warranting remand if she fails to address or account for a claimant's non-severe impairments in their RFC analysis, or if she only considers a claimant's individual impairments in isolation without considering their combined effects. *See, e.g., Terry*, 580 F.3d at 477 (holding that the ALJ committed an error warranting remand by ignoring several of the claimant's impairments, because "[a]lthough these impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether."); *Thomas*, 745 F.3d at 807 (holding it was an error for the ALJ not to have considered several of the claimant's non-severe impairments, and to have also only considered claimant's severe impairments *seriatim,* because the "combination of impairments could impose greater restrictions than any of [the claimant's] impairments taken singly.").

Here, the ALJ's RFC analysis fails to address several of Plaintiff's diagnosed and documented impairments, such as his dizziness, hypertension, unhealed left

wrist fracture, myelopathy, and splenic lesion. *See, e.g.,* [10-1] 612-613, 629, 760, 767. It is true that consideration of at least some of these omitted impairments, on their own, might not have significantly impacted or even ultimately changed the ALJ's determination of Plaintiff's RFC. However, "that would only justify discounting their severity, not ignoring them altogether," and the ALJ was required to address them in her RFC analysis. *See Terry*, 580 F.3d at 477. In particular, the ALJ was required to consider the effect of the *combination* of these omitted impairments with Plaintiff's severe impairments of seronegative rheumatoid arthritis, bilateral lower extremity peripheral neuropathy, degenerative disc disease, and obesity. *See Terry*, 580 F.3d at 477 ("an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation."). The omission of these impairments was thus an error.[5]

The ALJ's failure to even mention several of Plaintiff's documented and medically diagnosed conditions would, on its own, likely warrant remand, because it would necessarily suggest that she failed to consider the combined effects of *all* of Plaintiff's medical impairments as required. Additionally though, for the severe

---

[5] The Commissioner acknowledges that the ALJ did not explicitly mention the above impairments, but argues the error was harmless because "no medical source indicated that they would cause greater functional limitations than what was included in the ALJ's RFC." [24] 12-13. However, as discussed further below, it is not obvious to the Court that the ALJ would have reached the same RFC if she had properly considered *all* of the above impairments *in combination* with Plaintiff's severe impairments. *Cf. McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (an ALJ's error may be harmless if the court is "convinced that the ALJ will reach the same result" on remand). In any event, the Commissioner's passing suggestion that the consideration of these impairments would not have changed the result is not enough to convince the Court that is the case, and is not enough to excuse the ALJ's failure to follow the clear Seventh Circuit mandate that she was to consider all of Plaintiff's impairments and their combined effect.

8

impairments the ALJ did address, she analyzed each one in *seriatim*, which was also an error. *See Thomas*, 745 F.3d at 807; *see generally,* [10-1] 15-19. For example, the ALJ discussed Plaintiff's diagnosis of seronegative rheumatoid arthritis and the records related to his condition and treatment, and determined based on the evidence in the record that Plaintiff's arthritis in his hands "limited him to light jobs that allow for only [*sic*] frequent bilateral handling and fingering. . ." [*Id.*] at 16. The ALJ then went on to separately discuss Plaintiff's peripheral neuropathy and indicated that it supported limiting Plaintiff to "light jobs with no exposure to unprotected heights and with the postural limitations detailed above." [*Id.*].[6] The ALJ then briefly discussed the evidence of Plaintiff's degenerative disc disease, but did not address how, if at all, the condition impacted the ALJ's RFC determination. [*Id.*] at 16-17.

Missing in the ALJ's separate analysis of each of these conditions was any discussion of how, when taken *in combination*, the conditions might impact Plaintiff's ability to perform light work. The combination of Plaintiff's arthritis along with his peripheral neuropathy and degenerative disc disease could likely require a more restricted RFC than each one individually, and therefore the ALJ was required to consider their combined effect in her analysis. *See Thomas*, 745 F.3d at 807. For instance, there is evidence in the record that each of these conditions had at least some effect on Plaintiff's motor or grip strength and range of motion with his hand. *See generally* [10-1] 16-17. The impairments taken in combination could thus

---

[6] Those postural limitations were that the Plaintiff can "occasionally kneel, crouch, crawl, and climb ramps and stairs, but can never climb ladders, ropes, and scaffolds, or work at unprotected heights." [*Id.*] at 14.

9

compound the restrictions in Plaintiff's ability to finger and handle bilaterally. And yet, the ALJ found that Plaintiff can frequently finger and handle bilaterally after only specifically discussing his arthritis. [*Id.*] 15-16. ("The undersigned has considered the claimant's arthritis, particularly in his hands, in limiting him to light jobs that allow for only frequent bilateral handling and fingering . . ."). The ALJ's error in her RFC analysis on this point is further compounded by the omission of some of the impairments mentioned above, such as Plaintiff's unhealed left wrist fracture. *See* [10-1] 557, 612-612. This impairment, when taken in combination with Plaintiff's other conditions, could also further restrict his ability to "frequently" finger and handle bilaterally, and it therefore should have been part of the ALJ's discussion.

Additionally, there is Plaintiff's dizziness which, when taken in combination with his severe impairments of peripheral neuropathy, degenerative disc disease and obesity, could result in a more restricted RFC in terms of the Plaintiff's ability to stand or walk for approximately six hours out of an eight-hour workday as required for light work. *See, e.g.,* [10-1] 44, 748-49, 757, 766-67.[7] The ALJ's failure to consider Plaintiff's dizziness specifically was thus an additional error. *See Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000) (concluding that the "ALJ's failure to consider the evidence of [claimant's] dizziness alone precludes us from 'evaluat[ing] ... whether

---

[7] There is evidence that Plaintiff was referred to physical therapy to strengthen his coordination and balance issues related to his dizziness. [*Id.*] 766-67. Further, physical therapy records indicate Plaintiff experienced several functional deficits, including decreased mobility and strength, related to his diagnosed conditions of low back pain, peripheral neuropathy, and dizziness. [*Id.*] 748-49 This evidence, along with Plaintiff's hearing testimony and reports to his health care providers about his dizziness and how it impacted his ability to stand and move around, [*id*] 44, 757, strongly suggests that this condition had at least some impact on Plaintiff's ability to stand and walk for extended periods.

10

substantial evidence existed to support the ALJ's finding'" regarding the claimant's ability to work.) (internal citation omitted).

The ALJ's only explicit reference in her RFC analysis to considering the combined effects of any of Plaintiff's impairments comes in the context of discussing Plaintiff's obesity. [10-1] 17.[8] There, the ALJ does acknowledge that she "must consider [Plaintiff's obesity] to determine if it alone, *or in combination with other impairments* significantly limits" Plaintiff's ability to work. *Id.* (emphasis added). However, the ALJ does not provide any further elaboration or analysis on this point, other than to summarily conclude in the next sentence that "[t]he combined effects of the claimant's obesity, along with his other impairments, support the reduced light residual functional capacity described in this finding." [*Id.*]. As discussed further below, such a passing statement, without further elaboration, is insufficient. *See, e.g., Sarah M. v. Saul,* No. 3:19CV1150, 2020 WL 4932541, at *13 (N.D. Ind. Aug. 21, 2020) ("the ALJ's general statement that she considered the combination of Plaintiff's conditions is inadequate").

> 2. *The Commissioner's argument that the ALJ did adequately consider all of Plaintiff's impairments in combination is without merit.*

The Commissioner disputes that the ALJ failed to consider the combined effect of all of Plaintiff's impairments and points to a line in the ALJ's opinion which states

---

[8] The ALJ does briefly reference considering the combined effects of Plaintiff's impairments in the context of Step 2, in her analysis of whether any of the Plaintiff's impairments or combination of impairments meet any of the listings in in regulations. The Plaintiff does not specifically challenge the ALJ's analysis at Step 2, but regardless, whether or not the ALJ did briefly examine whether the combined effects of Plaintiff's impairments met any listing, she was also required to explicitly consider the combined effects of Plaintiff's impairments in her RFC analysis, which she failed to do.

11

that "all of the claimant's medically determinable impairments, both severe and non-severe, have been considered in assessing his residual functional capacity." [24] 12 (citing [10-1] 13). The Commissioner cites to *Nelson v. Bowen* 855 F.2d 503 (7th Cir. 1988), and argues that the ALJ's statement demonstrates that she did in fact perform the required analysis, *i.e.*, she considered all of Plaintiff's impairments and their combined effects. *See* [24] 23.

The Court disagrees with the Commissioner's suggestion that under *Nelson* such a general statement by the ALJ is sufficient. *See generally Ridinger v. Astrue,* 589 F. Supp. 2d 995, 1004-05 (N.D. Ill. 2008) (discussing *Nelson* and rejecting a similar argument from the Commissioner that the ALJ's statement that he "considered all symptoms" was sufficient). In *Nelson,* the court considered a general statement by the ALJ that "[t]he evidence does not show any medically determinable impairments which, singly or combined, preclude claimant from engaging in substantial gainful activity." 855 F.2d at 508. The court suggested that, based on this language, the ALJ "apparently *did* consider the combined effects" of the claimant's impairments. *Id.* (emphasis in original). But, as the District Court in *Ridinger* observed, this language from *Nelson* was dicta at best, and "was not necessary to the Seventh Circuit's resolution of the appeal, since the appellant's case was already being remanded on other grounds." *Ridinger,* 589 F. Supp. 2d at 1004. Further, the *Nelson* court criticized the ALJ's development of the record and stated that "on remand further consideration should be given to the combined effects of [the claimant's] impairments." *Nelson,* 855 F.2d at 508.

12

In short, the Court disagrees that *Nelson* stands for the proposition that all that is required is that the ALJ include a general statement that they have considered all of a claimant's impairments or the combination of impairments. Rather, the ALJ must actually "articulate [her] consideration of all of [a claimant's] severe and non-severe impairments in combination and build the requisite 'logical bridge' between the evidence and [her] conclusion" *See Parker v. Berryhill*, No. 15 CV 10313, 2017 WL 1232998, at *10 (N.D. Ill. Apr. 4, 2017). Indeed, several courts in this Circuit, in decisions issued since *Nelson,* have found similar general statements from ALJs inadequate. *See, e.g., Parker*, 2017 WL 1232998, at *10 ("an explicit analysis of the combined effects of [claimant's] impairments, as opposed to just a general statement that all impairments were considered, is required."); *Sarah M.*, 2020 WL 4932541, at *13 ("the ALJ's general statement that she considered the combination of Plaintiff's conditions is inadequate. . ."); *Nathensen v. Berryhill*, No. 2:17-CV-49-JEM, 2018 WL 1444331, at *4 (N.D. Ind. Mar. 23, 2018) ("[t]he bare statement that the ALJ had taken all of Plaintiff's impairments, including obesity, into account does not show the Court how, if at all, the ALJ incorporated Plaintiff's obesity into his RFC."); *see also Ridinger*, 589 F. Supp. 2d at 995 (finding that ALJ's "boilerplate" statement that he "considered all symptoms" was insufficient, and that "there is no indication that the ALJ fulfilled his duty to consider all of the relevant evidence because he did not articulate any analysis of the combined effects of all of [claimant's] impairments.")

The ALJ's statements here are likewise insufficient. The ALJ's general reference to considering "all" of Plaintiff's impairments, severe and non-severe, does

13

not demonstrate to the Court how the ALJ actually incorporated all those impairments into her RFC analysis, or how she considered the combined effects of those impairments, particularly when several are not mentioned at all and others are discussed in isolation. Further, the ALJ's passing statement that she considered Plaintiff's obesity in combination with "his other impairments," is likewise insufficient. The ALJ does not articulate *how* she considered Plaintiff's obesity in combination with his other impairments, nor does she explain why his obesity in combination with another specific impairment or impairments supports her RFC finding, other than to state in conclusory fashion that it does. Additionally, the ALJ's statement does not demonstrate to the Court how, if at all, the ALJ analyzed the combined effects of Plaintiff's other severe impairments of arthritis, peripheral neuropathy, degenerative disc disease *with each other,* when the rest of the opinion appears to take each separately.

Finally, the Court notes that the ALJ's errors here were not harmless. The ALJ's failure to articulate her analysis and build the "logical bridge" from the evidence to her conclusions prevents the Court from doing a meaningful review of the ALJ's RFC findings. *Parker*, 2017 WL 1232998 at *6, (citing *Pepper v. Colvin*, 712 F.3d 351 (7th Cir. 2013)). Further, as noted above, had the ALJ considered all of Plaintiff's impairments in combination, it could have resulted in a more restricted RFC than the ALJ formulated. *See Thomas*, 745 F.3d at 807. As Plaintiff notes in his brief, the ALJ's determination that the Plaintiff had the RFC to perform the physical requirements of light work—including his ability to stand or work for approximately

14

six hours and frequently finger or handle bilaterally—was central to the ALJ's ultimate conclusion that Plaintiff is not disabled. Thus, the ALJ's failure to adequately address all of Plaintiff's impairments and the combination of those impairments in reaching that RFC determination was not harmless, and in fact may have impacted the ultimate outcome.

In sum, the ALJ's RFC determination did not properly address the totality of Plaintiff's impairments nor the combination of those impairments. The RFC therefore lacks a substantial evidentiary basis, and the Commissioner's decision must be reversed and remanded.

**B. The ALJ ignored evidence and favorable VE testimony related to Plaintiff's potential for absences and off-task time.**

Plaintiff also argues that the ALJ erred at Step 5 of the analysis with regards to his ability to adjust to other work. Although the Court has already found the ALJ committed an error warranting remand, the Court finds that the ALJ committed an additional error here that warrants discussion so that it may be remedied on remand.

As part of Step 5, the ALJ consulted a VE to determine whether jobs existed in the national economy that Plaintiff was capable of performing. *See* [10-1] 20, 76-77. The ALJ asked the VE to assume a claimant with the same physical RFC as Plaintiff and with the same age, education, and work history, and proceeded to question the VE about the kinds of jobs such a claimant could perform. [*Id.*] 76-77. The VE testified that such an individual could be a ticket taker, cafeteria attendant, or cashier. [*Id.*]. The ALJ relied on this testimony in order to determine that Plaintiff

15

was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and was therefore not disabled. [*Id.*] 20.

Plaintiff argues that the ALJ committed an error because her hypothetical questions to the VE were based on a flawed RFC determination and failed to include all of his impairments and the limitations caused by them. [16] 13-14. Plaintiff further argues that the ALJ ignored favorable testimony from the VE which indicated that he would have difficulty adjusting to work due to his potential for absences and off-task time and that this was an error under Seventh Circuit precedent. [*Id.*].

As to Plaintiff's first argument, the Court has already found that the ALJ's RFC determination was not based on substantial evidence, because she did not consider and analyze all of Plaintiff's impairments and the combination of those impairments. Thus, the Court need not specifically address the propriety of the ALJ's hypothetical questions to the VE. It suffices to say that, on remand, the ALJ may need to re-examine the VE and pose new hypotheticals in light of her renewed analysis of Plaintiff's RFC, an analysis which must include consideration of *all* of Plaintiff's impairments and the combined effects of those impairments.

However, as to Plaintiff's second argument that the ALJ ignored favorable testimony from the VE related to Plaintiff's potential work absences and off-task time, here the ALJ committed an additional error that warrants remand. One of Plaintiff's treating physicians, Dr. Charles Geringer, submitted an assessment form which included his opinion that the Plaintiff would likely be absent from work due to his impairments or treatments for three days per month. [10-1] 434. Dr. Geringer

16

also opined that Plaintiff's symptoms interfere with the attention and concentration needed to perform even simple tasks, such that he would likely be off-task at work due to his symptoms at least fifteen percent of the time. [*Id.*] 432. In light of these opinions, Plaintiff's counsel asked the VE at the hearing what the allowable amount of absences and off-task time would be for those jobs that she had identified in response to the ALJ's hypothetical—those being ticket taker, cafeteria attendant, or cashier. [*Id.*] 78-79. The VE testified that those jobs would allow workers to only have six to ten days of absence per year, and that individuals in these jobs could not be off task more than five percent of the time. [*Id.*]. Obviously, if the ALJ had accepted Dr. Geringer's opinions about Plaintiff's potential for absences and off-task time, then Plaintiff would necessarily be unable to perform the jobs identified by the VE. This could likely have changed the ultimate outcome on Plaintiff's application, as the ALJ relied exclusively on the testimony of the VE in determining that Plaintiff could perform other jobs in the national economy and was thus not disabled. [*Id.*] 20.

Despite the apparent relevance of Dr. Geringer's opinions and the VE's testimony related to absences or off-task time, and their potential impact on the disposition of Plaintiff's application, the ALJ's opinion does not mention either, nor does the ALJ offer an explanation for why she disregarded this evidence. This was an error. *See., e.g., Childress v. Colvin*, 845 F.3d 789, 793 (7th Cir. 2017) (ALJ committed error by failing to explain why the VE's testimony that "an employee who misses three or more days of work a month is unemployable" did not apply to the claimant); *Farrell v. Astrue,* 692 F.3d 767, 773 (7th Cir. 2012) (noting the ALJ committed an

17

error by ignoring evidence from a physician which suggested claimant's conditions would result in intermittent attendance); *Connor v. Shalala*, 900 F. Supp. 994, 1004 (N.D. Ill. 1995) (holding that it was an error for the ALJ not to "explicitly consider the testimony of the VE that [plaintiff's] attorney solicited on cross-examination regarding [his] potential blackouts and absences from work."). Much like the ALJ's error discussed in Section A above, the ALJ's failure here to consider contrary evidence, and to explicitly address why she did not find it persuasive, constitutes a failure to build the necessary "logical bridge" between the evidence and her ultimate conclusions. *See Berger*, 516 F.3d at 544.

To be sure, the ALJ discussed many of Dr. Geringer's specific opinions, including from the same assessment form, with regards to Plaintiff's condition and how they impacted his ability to perform certain tasks. [*Id.*] 18. For example, Dr. Geringer also opined that the claimant could stand or walk for less than two hours a day, and could only use his hands fingers and arms ten percent of the day. [*Id.*]. After briefly discussing these and some other specific opinions, the ALJ ultimately concluded that "the medical evidence of record, including Dr. Geringer's own treatment notes as well as records from other providers, shows relatively unremarkable objective findings that do not support the severe limitations Dr. Geringer has assessed," and therefore the ALJ gave Dr. Geringer's opinions "little weight." [*Id.*]. Indeed, the Commissioner responds to Plaintiff's argument here by suggesting that, because the ALJ concluded that Dr. Geringer's opinions were inconsistent with the record evidence and should be afforded little weight, she was

not required to incorporate his suggested limitations, including those related to Plaintiff's absences and off-task time, into her analysis. See [24] 14-15

However, the fact that the ALJ stated that she was generally giving Dr. Geringer's opinions little weight is beside the point. Rather, the ALJ's error here was her apparent failure to consider certain favorable opinions and testimony that could have led to a different result, and to explain why she was giving those *particular opinions* little weight. The Court does not take a position on whether the ALJ should ultimately have accepted Dr. Geringer's opinions or whether it was proper to afford them little weight. Nor is the Court suggesting the ALJ must accept Dr. Geringer's specific opinions about absences and off-task time. But the ALJ may not "ignore entire lines of contrary evidence," and under Seventh Circuit precedent that includes favorable evidence and VE testimony related to a Plaintiff's potential for absences and off-task time. In this case, the fact that any discussion of those specific opinions or the VE's corresponding testimony is omitted makes it impossible for this Court to determine whether the ALJ properly considered the evidence and why it was discounted. *See, e.g., Farrell,* 692 F.3d at 773 ("Matters would be different if the ALJ had confronted [plaintiff's doctor's] opinions and had explained why he was rejecting them. But he did not. . . This was an error"). Thus, on remand the ALJ must demonstrate that she has considered the favorable opinions from Plaintiff's doctor and any favorable testimony from the VE, and if she is to discount the evidence, she must explain why it is not persuasive.[9]

---

[9] Plaintiff argues separately in his brief that the ALJ's discounting of Dr. Geringer's other opinions was an error because she did not adequately explain her reasoning or why she found

19

In sum, the ALJ's decision fails to properly address and consider favorable evidence and testimony related to Plaintiff's potential for absences and off-task time. Therefore, the ALJ's determination at step five that there existed other work in significant numbers that the plaintiff could perform was not based on substantial evidence, which supports reversal of her decision.

## Conclusion

For the forgoing reasons, Plaintiff's motion for summary judgment [15] is granted, and the Commissioner's motion for summary judgment [23] is denied. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_Heather K. McShain_
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: February 10, 2022**

---

his opinions were inconsistent with the medical record evidence. *E.g.,* [16] 9-10. The Court need not decide this issue, as it finds the ALJ's omission of any discussion of Dr. Geringer's opinions or the VE testimony related to absences and off-task time was an error. On remand however, the Court notes that the requirement that the ALJ explicitly explain why she is not persuaded by contrary evidence applies with equal force to *all* of Dr. Geringer's opinions.